IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| ABUBAKAR AHMED, | ) | CASE NO. 1:17-CV-02555 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| OHIO STATE HIGHWAY PATROL, et al., | ) | |
| | ) | ROPORT AND RECOMMENDATION |
| | ) | |
| | ) | |
| Defendants. | | |

## Introduction

Before me by referral[1] is Abubakar Ahmed's *pro se* civil rights action largely asserted under 42 U.S.C. § 1983,[2] against the Ohio Turnpike and Infrastructure Commission (Turnpike Commission) and the Ohio State Highway Patrol, together with various individual patrol officers (Highway Patrol).[3] Here, both the Highway Patrol defendants[4] and the Turnpike Commission[5] have each moved to dismiss the complaint

---

[1] ECF No. 7.

[2] Ahmed also asserts claims purportedly arising under 42 U.S.C. §§ 1981, 1985, 1986, and arising under the Civil Rights Act of 1964 (42 U.S.C. §§2000-e5, 2000-e6). Ahmed in addition includes a catch-all claim that seeks to invoke supplemental jurisdiction over any state claims that may exist. ECF No. 1 at 1-2.

[3] ECF No. 1.

[4] ECF No. 21.

[5] ECF No. 23.

mostly under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief may be granted. All defendants also seek dismissal under Rule 12(b)(5) because service was not timely perfected.[6] Ahmed has responded in opposition to those motions,[7] and each defendant or group of defendants has replied that response.[8]

For the reasons that follow, I will recommend that the matter be dismissed.

## Facts – The Complaint

Ahmed alleges that as part of the nationwide "war on drugs," he was improperly stopped on December 10, 2015 "while traveling on roads and interstate highways in Ohio and other States by Defendants."[9] He asserts that this stop was "not the first time" he stopped by "Defendant officers" under "the guise of minor traffic law violations" and was then "subjected to intense interrogation regarding his travel itinerary, background, purpose for traveling and other issues unrelated to the alleged traffic violation."[10] Ahmed contends that in most cases he was issued a "warning rather than a ticket to avoid creating a paper trail of public records of the stop," while on other occasions he was "issued a warning and/or ticket which indicated that he was a Caucasian male on some occasions."[11]

Further, Ahmed alleges that on "numerous occasions" he was asked to consent to a search of his vehicle without probable cause, and that when he refused, he was "detained

---

[6] ECF Nos. 21, 23.
[7] ECF No. 32.
[8] ECF No. 33 (Turnpike Commission); ECF No. 34 (Highway Patrol).
[9] ECF No. 1 at 4.
[10] *Id*. at 4-5.
[11] *Id*. at 5.

against his will."[12] Moreover, he maintains that the "factual circumstances" of his numerous "stops, detentions and searches" are "virtually identical" to the stops outlined by "Operation Pipeline,"[13] and regulated under a settlement agreement in *Arnold v. Arizona v. Department of Public Safety*.[14]

Ahmed claims that these stops have "resulted in a disproportionate number of minority motorists being stopped, detained and subject to search," and that the stops "violate the settlement agreement reached in *Arnold*."[15]

Ahmed further makes specific factual allegations concerning individual defendants.

- He claims that the Highway Patrol, as an organization, maintains a "custom and practice of discrimination."[16]
- He claims that a Highway Patrol search dog [the dog, unnamed, is included as a defendant] "made a false alert" that Ahmed had drugs in his vehicle.[17]
- He states that Trooper Phillip Melichant frisked Ahmed as part of a stop and in so doing "patted the private areas of [Ahmed] a couple of times just to annoy and harass [Ahmed] under the pretext he is just searching for drugs."[18]
- He contends that a "Lieutenant Beth,"[19] who was supposedly "in charge of subordinates on the day in question," told Ahmed in a 911 call that "he could do

---

[12] *Id.*

[13] *See U.S. v. Sosa*, 104 F.Supp.2d 722, 728-29 (E.D. Mich. 2000). Operation Pipeline was a drug interdiction program involving both federal and state law enforcement agencies that focused attention on highways most utilized in drug trafficking. A "pipeline stop" in this context is when an automobile or its occupants fit a drug courier profile, police then "extend" a basic traffic stop by questioning the occupants and seeking permission to search the vehicle for evidence of drug trafficking.

[14] 2006 WL 2168637 (D. Arizona July 31, 2006).

[15] ECF No. 1 at 5.

[16] *Id.* at 2 ¶ 5.

[17] *Id.* at ¶ 6.

[18] *Id.* at ¶ 7.

[19] Beth is named as a defendant but is not as part of the Highway Patrol defendants. See, ECF No. 34 at 1 (listing the Highway Patrol defendants). Beth, as well as the other Highway Patrol defendants, was originally represented by attorney Leigh Bayer (ECF No.

nothing about his subordinates who were engaged in conspiracy against [Ahmed]."[20]

- He alleges that Trooper Carl Hilling stopped Ahmed "for the sole purpose of inspection and subjected [Ahmed] to illegal searches, seizures and harassment."[21]

- He asserts that Trooper Biskup, together with "other officers," "conspired and subjected [Ahmed] to deprivation of rights" secured by the Constitution.[22]

In his enumerated claims, Ahmed asserts:

1. Count One - The defendants (except for the Highway Patrol) acting "in concert with one another" engaged in intentional racial discrimination in how they engaged in traffic patrol and drug interdiction;[23]

2. Count Two – The defendants (except for the Highway Patrol) acting in convert with one another intentionally subjected Ahmed to unreasonable search and seizure based on his race;[24]

3. Count Three – The defendants (except for the Highway Patrol) acting in concert with one another discriminated against Ahmed based on his race;[25]

---

10). Attorney Bayer was then granted permission to withdraw as attorney for Beth (ECF No. 17) at the same time the other named Highway Patrol defendants were given an extension of time to file an answer (ECF No. 18). In the motion to withdraw as counsel for Beth, attorney Bayer states that the Highway Patrol does not have, and has never had, an employee named Lieutenant Beth. ECF No. 12 at 2. Attorney Bayer further states that there was insufficient information in the Complaint by which to properly identify the party denominated as "Lieutenant Beth." ECF No. 12 at 2.

[20] ECF No. 1 at 3, ¶ 8.

[21] *Id.*, ¶ 9.

[22] *Id.*, ¶ 10.

[23] *Id.* at 6.

[24] *Id.* at 6-7.

[25] *Id.* at 7.

4. Count Four – The defendants (except for the Highway Patrol) acting in concert with one another conspired to stop, detain and search Ahmed motivated by racial animus;[26]

5. Count Five – the defendant individual officers acting in concert with one another knew or should have known of the conspiracy delineated above to damage Ahmed, and, having the power to prevent it, failed to act, causing Ahmed harm;[27]

6. Count Six – the defendants (except for the Highway Patrol) acting in concert with one another intentionally caused Ahmed to be penalized and deterred from the exercise of his right to interstate travel;[28]

7. Count Seven – the Ohio Highway Patrol, which receives federal funds, employed drug interdiction methods that, on an ongoing basis, discriminate against minorities traveling on Ohio highways;[29]

8. Count Eight – all defendants, acting in concert, failed to follow due process/failed to train in carrying out their duties.[30]

In addition to the numbered claims, Ahmed also asserts in his prayer for relief that the defendants have "engaged in a conspiracy with respect to its [*sic*] wrongful levy of Towing [*sic*] charges to the Plaintiff without cause."[31] He seeks compensatory and punitive

---

[26] *Id*. at 7-8.
[27] *Id*. at 8.
[28] *Id.* at 8-9.
[29] *Id.* at 9.
[30] *Id*. at 10.
[31] *Id*.

damages by means of a jury trial, and also asks for "such other relief as the Court may deem just and proper."[32]

## Motions

### A. Defendants

The defendants' motions collectively raise several distinct arguments:

### 1. *The service of process was untimely*.[33]

This argument notes first that the suit was filed December 7, 2017,[34] but summonses were not issued until November 16, 2018,[35] and the defendants were only served on November 19, 2018[36] – or nearly a year after the filing of the action.[37] The Highway Patrol defendants state that because they were not served with the summons and complaint within the 90-day requirement,[38] the Court is without personal jurisdiction over them and so the action must be dismissed.[39]

---

[32] *Id*.

[33] ECF No. 21.

[34] ECF No. 1.

[35] ECF No. 9.

[36] ECF No. 11.

[37] Ahmed moved to proceed in forma pauperis on the same day the suit was filed, and the Court granted that motion on April 18, 2018. The docket sheet indicates that after the Court on March 9, 2018 ordered Ahmed to provide it with completed U.S. Marshal forms, summonses and copies of the complaint within 30 days (ECF No. 4), Ahmed timely returned those items to the Court on April 6, 2018. (Non-document entry of April 6, 2018). However, the Marshal was not issued the summonses until November 16, 2018. (ECF No. 9). Service was made on November 19, 2018. (ECF No. 11).

[38] Rule 4(m) of the Federal Rules of Civil Procedure requires that service be perfected within 90 days after the complaint is filed.

[39] ECF No. 21 at 2.

### 1. Defendants Highway Patrol, Turnpike Commission, a Highway Patrol dog and troopers in an official capacity may not be sued under 42 U.S.C. § 1983.[40]

A state agency, such as the Turnpike Commission and the Highway Patrol, individual state employees acting in an official capacity, and animals, such as a canine working for the Highway Patrol, are "persons" subject to suit under Section 1983.[41]

### 2. Individual claims against Trooper Biskup, Lieutenant Hill, Lieutenant Beth and the John Does must be dismissed because there is no respondeat superior liability under Section 1983.[42]

The argument here is that the complaint does not allege any facts that these defendants personally took part in any search or seizure of Ahmed or his vehicle but have been grouped together collectively as part of "Defendant Officers" or "Defendants."[43] Lieutenant Hill is simply named as a supervisor in charge of the officers with no allegation that he encouraged any specific act or in some way directly participated in it.[44] Lieutenant Beth cannot be identified.[45] Similarly, Trooper Biskup is not alleged to have taken any

---

[40] *Id.* (Highway Patrol and dog); ECF No. 33 at 3-4 (Turnpike Commission).

[41] *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (neither a State not its officials acting in an official capacity are "persons" under § 1983); *Hicks v. City of Barberton*, 5:11-cv-76, 2011 WL 3022089, at * 3 (N.D. Ohio July 22, 2011) (dog is not a "person" for purposes of Section 1983).

[42] ECF No. 21 at 7-8.

[43] *Id.* at 8. 1983 plaintiff must allege a plausible constitutional violation against each defendant. *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012)(citation omitted).

[44] *Id.* 1983 plaintiff must plead and prove facts that show a causal connection between the supervisor and the unconstitutional conduct of a subordinate. *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citation omitted).

[45] The consequences of the absence of a means to identify Lieutenant Beth, and the presence of John Doe defendants who have never been identified, will be further discussed later.

specific action against Ahmed, but rather the complaint asserts that Biskup conspired with "other officers" to deprive Ahmed of Constitutional rights.[46]

### 4. The complaint is not well-pleaded under the current rules of pleading.[47]

Here, the Highway Patrol defendants note that under the *Iqbal/Twombly*[48] standard, a complaint must do more than make "an unadorned, the-defendant-harmed-me allegation,"[49] which is supported by no more than a "threadbare recitation of the elements of a cause of action," together with "mere conclusory statements."[50] Rather, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[51] This requirement remains true for *pro se* plaintiffs, whose complaints, while entitled to be "liberally construed,"[52] must also still "contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory."[53] Courts are not bound to accept as true "a legal conclusion couched as a factual allegation."[54]

As discussed above, defendant Turnpike Commission notes that while Ahmed has clarified in his opposition that he alleges that the "events in the compliant took place on

---

[46] ECF No. 1 at ¶ 9.
[47] ECF No. 21 at 9-11.
[48] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Co. v. Twombly*, 550 U.S. 544 (2007).
[49] *Iqbal*, 556 U.S. at 677-78 (quoting *Twombly*, 550 U.S. at 555 (citation omitted)).
[50] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).
[51] *Iqbal*, 556 U.S. at 677-78 (quoting *Twombly*, 550 U.S. at 570).
[52] *Boag v. MacDougall*, 454 U.S. 364 (1982).
[53] *Havard v. Wayne*, 436 Fed. Appx. 451, 457 (6th Cir. 2007).
[54] *Iqbal*, 556 U.S. at 678.

the Ohio Turnpike,"[55] he nevertheless fails to allege any facts by which the Court could infer that the Turnpike Commission adopted a policy or custom promoting or permitting Constitutional violations on that road, or acted with deliberate indifference to such violations.[56] The Turnpike Commission states that merely using the conclusory phrase "deliberate indifference" in the complaint does not satisfy the pleading requirement of setting forth factual allegations from which it may be inferred that the Turnpike Commission engaged in such conduct.[57]

5. *Equal protection, substantive/procedural due process, conspiracy, official capacity*

The Highway Patrol defendants separately analyze the complaint as to claims of violations of the rights to Equal Protection, Due Process, to travel in interstate commerce, and the claim of conspiracy.[58] In these areas, the Highway Patrol defendants state:

- *Equal protection* – The defendants state that Ahmed did not allege that he was a member of a protected class and that enforcement of traffic laws against him was done for a discriminatory purpose and had a discriminatory effect on the identifiable group to which Ahmed belongs.[59] The Highway Patrol defendants assert that

---

[55] ECF No. 32 at 1.
[56] ECF No. 33 at 2.
[57] *Id*. at 4.
[58] ECF No. 21 at 11-14.
[59] *Id*. at 11. See, *United States v. Armstrong*, 517 U.S. 456, 465 (1996). To prevail on an Equal Protection claim grounded on the racial selective enforcement of a facially neutral law, the plaintiff must show that the complained of action was: (1) motivated by discriminatory purpose and (2) had a discriminatory effect on the identifiable group to which the plaintiff belongs.

Ahmed provides no factual allegations that he is part of a protected group nor that the actions taken were done for a discriminatory purpose.[60]

- *Substantive due process* – Athough a substantive Due Process right exists to travel, that right is subject to government regulation, such as enforcement of traffic laws.[61]

- *Procedural due process* – No procedural due process violation was properly pled because Ahmed failed to allege that no adequate state remedy for the purported harm was available after the alleged denial of due process.[62] To that end, to bring suit under Section 1983 for an alleged procedural due process violation a plaintiff must allege that: (1) there was a deprivation of a constitutional right; (2) it was done under color of state law; and (3) state damage remedies are inadequate to address the alleged wrong.[63]

- *Conspiracy* - In order to allege conspiracy in a Section 1983 action the plaintiff must allege facts that: (1) a single plan existed, (2) the defendants shared the objective of depriving the plaintiff of his rights, and (3) an overt act was committed in furtherance of the conspiracy that injured the plaintiff.[64] Under the

---

[60] ECF No. 21 at 11.

[61] *U.S. v. Hare*, 308 F.Supp.2d 955, 1001 (D. Nebraska 2004) (citations omitted). "The constitutional right to travel through [a state] is not a right to travel in any manner one wants, free of state regulation, and it does not give [a person] the right to ignore [state] traffic laws at their discretion."

[62] ECF No. 21 at 12.

[63] *I-Star Communications Corp. v. City of East Cleveland*, 885 F.Supp. (N.D. Ohio 1995)(citations omitted).

[64] *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).

relevant rules of pleading, a failure to allege facts, as here, showing that the defendants were knowingly part of a common plan to violate Ahmed's rights renders the conspiracy claim no "plausible on its face" because "conclusory allegations of conspiracy are insufficient."[65]

- *Official capacity* – The Eleventh Amendment bars suits for monetary damages against the state, and thus bars suits for damages against state employees acting in an official capacity.[66]

## B. Ahmed's response

In response, Ahmed states:

1. The Turnpike Commission is liable under a failure to train/deliberate indifference theory, and in that regard points to the Turnpike Commission's own statement that it does not provide any training to Highway Patrol officers.[67]

2. Lieutenant Bath can be identified because he was on a 911 phone call Ahmed made at the time of the stop.[68]

---

[65] *Twombly*, 550 U.S. at 555.

[66] *Will v. Michigan State Police*, 491 U.S. 58, 71 (1989).

[67] ECF No. 32 at 1. Ahmed here also asserts a racial component by alleging that the Turnpike Commission "places only white men to watch the turnpike, …[and further] 100% of the officials who stopped the plaintiff were whites and 100% of the people who got stopped for the so-called inspections were blacks." *Id*. at 2.

[68] ECF No. 32 at 2-3.

3. Lieutenant Hill is a proper defendant because he did not play a passive role in depriving Ahmed of his rights, but rather received complaints from Ahmed and then did nothing.[69]

4. Naming the dog was a 'misnomer' and the dog "should be replaced with its owner or trainer as a defendant."[70]

5. Ahmed has pleaded "enough facts to put the named defendants and john does in [*sic*] notice as to what the claim is about."[71]

6. As to Eleventh Amendment immunity and complaints against state agencies and employees in an official capacity, Ahmed notes (a) that he has requested injunctive relief as well as monetary damages, and (b) his complaint is "similar" the suit brought by the ACLU against the Arizona Highway Patrol that resulted in a settlement agreement.[72]

7. Ahmed should be granted leave to amend if, after reading his *pro se* complaint with leniency, it appears beyond a doubt that he can prove no set of facts that would entitle him to relief.[73]

---

[69] *Id.* at 3.

[70] *Id.*

[71] *Id.*

[72] *Id.* at 4 (citing *Arnold*, *supra*). Ahmed claims that the settlement was entered by the Ninth Circuit (ECF No. 32 at 4) but, as noted here above, the settlement actually was entered by the district court in Arizona. Moreover, the named defendant was the Arizona Department of Public Safety and not the "Arizona State Highway Patrol."

[73] ECF No. 32 at 5.

8. Ahmed contends that he was complied with *Iqbal/Twombly*, which he asserts does not require specific facts but rather only that the defendant be given "fair notice" of the claims against him.[74]

9. The summonses were timely filed because service could not be issued until the court had approved them. Moreover, even if they were late, the remedy would be for the Court to dismiss the action without prejudice and require service to be made by a date certain.[75]

## C. Defendants' reply

In their reply, both the Turnpike Commission and the Highway Patrol defendant essentially restate the argumentsAA raised previously.[76]

# Analysis

## A. Standards of review

### 1. *Insufficient service of process – Rule 12(b)(5)*

Rule 12(b)(5) states that a party may assert the defense of "insufficient service of process" by motion. Service of process, in turn, is governed by Rule 4(m) of the Federal Rules of Civil Procedure which provides:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period ….

---

[74] *Id*. at 6.
[75] *Id*. at 7.
[76] ECF Nos. 33, 34.

As Judge Lioi noted in her extensive discussion of this rule in *Warrior Imports, Inc. v. 2 Crave*,[77] a court, when confronted by a motion under Rule 4(m), must undertake a two-part analysis: (1) the court must determine if the plaintiff can show good cause for the failure to effect timely service, and (2) if the plaintiff has not shown good cause, the court must either: (a) dismiss the action without prejudice or (b) direct that service be made within a specified period.[78]

Establishing "good cause" for untimely service is the responsibility of the party [79] opposing the motion to dismiss. While Rule 4(m) itself does not define "good cause," the Sixth Circuit has recognized a number of extraordinary circumstances that would constitute "good cause," such as where a seriously ill *pro se* plaintiff made a good faith, but flawed, effort to perfect timely service, or where a *pro se* plaintiff failed to perfect service due to error made the court clerk and the United States Marshals.[80] But vague claims of hardship or inadvertent failures or mistakes do not constitute "good cause."[81]

Even in the absence of "good cause," the court may, in its discretion, enlarge the period for service beyond 120 days..[82] In determining whether to exercise this discretion the following factors are considered by the court: (1) whether a significant extension of time was required; (2) whether an extension of time would prejudice the defendant other

---

[77] 317 F.R.D. 66 (N.D. Ohio 2016).
[78] *Id*. at 69 (citations omitted).
[79] *Id*. (citations omitted).
[80] *Id*. (citations omitted).
[81] *Id*. (citations omitted).
[82] *Id*. at 69-70 (citations omitted).

than the inherent prejudice of having to defend the suit; (3) whether the defendant had actual knowledge of the suit; (4) whether a dismissal with prejudice would substantially prejudice plaintiff; and (5) whether the plaintiff had made any good faith efforts at effecting proper service of process.[83]

### 2. Failure to state a claim -- Rule 12(b)(6)

Rule 12(b)(6) provides for the dismissal of a complaint that "fail[s] to state a claim upon which relief may be granted." As such, Rule 12(b)(6) permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."[84] The motion to dismiss allows the court to evaluate whether the plaintiff has pleaded a cognizable claim and further serves the interest of judicial economy by providing for dismissal of meritless cases that would otherwise waste judicial resources and commit the parties to unnecessary discovery.[85]

Under the current rules of pleading articulated by the Supreme Court, when evaluating a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[86] If a court decides in light of its judicial experience and common sense that the claim is not plausible, the case may be dismissed at the pleading stage.[87] In

---

[83] *Id*. at 70 (citations omitted).
[84] *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (citation omitted).
[85] *Brown v. City of Memphis*, 440 F.Supp. 2d 868, 872 (W.D. Tenn. 2006).
[86] *Iqbal*, 556 U.S. at 678 (citation omitted).
[87] *Id*. at 679.

that regard, the factual allegations of the complaint "must be enough to raise a right to relief above [a] speculative level."[88]

Moreover, a claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."[89] A complaint need not contain detailed factual allegations, but a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[90] Further, in deciding a Rule 12(b)(6) motion to dismiss, courts may look to "matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint.[91]

Finally, while it is true that a complaint filed a *pro se* plaintiff must be held to less stringent standards than one drafted by attorneys,[92] it is also true that it is not the court's duty to "conjure up unpled allegations,"[93] nor to create claims on behalf of a *pro se* litigant.[94]To mandate otherwise would require the court to "explore exhaustively all potential claims of a *pro se* plaintiff [and] would also transform the court from its legitimate

---

[88] *Ass'n of Cleveland Firefighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).
[89] *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
[90] *Id.*
[91] *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (internal quotation omitted).
[92] *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).
[93] *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979).
[94] *Clark v. Nat'l Travelers Life Ins. Co*., 518 F.2d 1167, 1169 (6th Cir. 1975).

advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."[95]

## B. Application of standards

### 1. *Service of process*

The record here shows that on March 9, 2018 Ahmed was directed by this Court to complete the summonses and relevant forms within 30 days.[96] On April 6, 2018 – or within the time limit set by the Court - Ahmed then filed a notice indicating that he complied with the Order,[97] a fact that is confirmed by a docket entry stating that Ahmed had submitted forms, summonses and copies of the complaint to the clerk's office in Akron, and from there the materials were forwarded to the Court in Cleveland.[98] The next relevant event that appears on the docket occurred less than two weeks later – April 18, 2018 – when Ahmed's motion to proceed *in forma pauperis* was granted.[99]

However, the summonses were not issued to the Marshal for service until November 16, 2018.[100] As noted above, once issued, all the summonses were served within three days and the returns of service were filed on November 26, 2018.[101]

---

[95] *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).
[96] ECF No. 4.
[97] ECF No. 5.
[98] Entry dated April 6, 2018.
[99] ECF No. 6.
[100] ECF No. 9.
[101] ECF No. 11.

The defendants here argue that the 90-day period for perfecting service begins to run on the date that a plaintiff's motion to proceed *in forma pauperis* is granted,[102] and that because service in this case occurred 222 days after the *in forma pauperis* motion was granted, it was untimely.

The facts in this matter are similar to those considered by the Sixth Circuit in *Byrd v. Stone*.[103] There, the district court, as here, granted a plaintiff's motion to proceed *in forma pauperis*.[104] But in *Byrd* the plaintiff was then erroneously told by the clerk's office that the summonses had been forwarded to the U.S. Marshal's office, where they would be served, but were not.[105] The defendants later moved to dismiss for untimely service and the district court agreed, finding that the plaintiff had made no showing of good cause for the late service.[106]

The Sixth Circuit disagreed. That Court noted first that when a plaintiff is proceeding *in forma pauperis*, it the court who must appoint a United States Marshal to serve the plaintiff's process.[107] As the *Byrd* court stated:

> [W]hen a plaintiff is proceeding in forma pauperis the court is obligated to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve

---

[102] ECF No. 34 at 6, citing *Harden v. AlliedBarton Security Services, LLC*, 2011 WL 744674, at * 1 (M.D. Tenn. Feb. 18, 2011) (citation omitted).
[103] 94 F.3d 217 (6th Cir. 1996).
[104] *Id*. at 218.
[105] *Id*.
[106] *Id*.
[107] *Id*. at 219 (citations omitted).

process once reasonable steps have been taken to identify for the court the defendants named in the complaint.[108]

Where service was not accomplished in a timely manner despite the plaintiff having promptly furnished the court with the name and address of the defendant, it is the clerk's office and the Marshal's Service that are "plainly derelict in performing their assigned tasks with respect to the plaintiff's original complaint."[109] Those circumstances, therefore, constitute an "automatic showing of good cause" under Rule 4 and so will not warrant the dismissal of the complaint for untimely service of process.[110]

Since Ahmed, like the plaintiff in *Byrd*, duly provided this Court with the necessary information to timely serve the defendants within the 120-day period, but the Clerk's office here did not promptly issue the summonses to the U.S. Marshal, the resulting untimeliness of service should not be ascribed to Ahmed such that his action is liable to dismissal. The defendants' motion in that regard should be denied.

### 2. *John Doe defendants*

Among the named defendants, the complaint asserts claims against "7-15 John Does, who, on information and belief, were employees of the Ohio State Highway Patrol and or Turnpike and Infrastructure Commission…."[111]

First, the present action was substantially filed under U.S.C. § 1983. In such cases, since Section 1983 itself does not itself contain a limitations period, Ohio's two year statute

---

[108] *Id.* (internal citations omitted).
[109] *Id.* at 220.
[110] *Id*.
[111] ECF No. 1 at ¶ 13.

of limitations applies.[112] Further, the filing of an action against John Doe defendants does not toll the statute of limitations against such defendants.[113]Moreover, filing an action against a John Doe defendant is not enough to commence an action against such an unidentified party.[114] Rather, "[a] civil action is commenced against a John Doe defendant when the complaint is amended under Rule15 to specifically name and identify that defendant by his true name and the plaintiff effects service of process upon that named defendant in compliance with Rule 4."[115] Prior to taking those actions, "the John Doe allegations in the complaint are mere surplusage."[116]

Here, there is no dispute that Ahmed has not undertaken to amend his complaint to name and identify the 7-15 John Doe defendants he claims are defendants. In addition, there is no dispute that the relevant two year limitations period has now expired for asserting any claims under Section 1983.[117] But, equitable tolling may extend or toll the limitations period.[118]   Courts will generally allow a plaintiff to identify an unknown John

---

[112] *Walker v. Miller,* 2019 WL 115699, at * 2 (N.D. Ohio March 11, 2019)(citation omitted).

[113] *Id*. (citation omitted).

[114] *Id*. at *3 (citation omitted).

[115] *Id*. (citation omitted).

[116] *Id*. (citation omitted).

[117] The complaint identifies December 10, 2015 as the only specified date where he was allegedly subject to an unconstitutional stop, and he further claims that any other improper stops were prior to that date. "This [December 2015 date] is not the first time but the Plaintiff was stopped on numerous occasions." ECF No. 1 at ¶ 15.

[118] Equitable tolling, which is to be used "sparingly," typically "applies when the litigant's failure to meet a legal deadline arose from circumstances beyond the litigant's control." *Humphrey's v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 561 (6th Cir. 2000).

Doe defendant through discovery, unless it is clear that discovery could not identify the John Does.[119]

Here, however, tolling the limitations period so that the names of John Does may now be ascertained in discovery is secondary to the questions of whether there have been cognizable claims asserted against the John Does in the first place. In other words, if Ahmed is now precluded from amending his complaint to remedy a failure to state a claim for relief, there is no reason to toll the limitations period so that he may identify parties to non-cognizable claims.

### a. The canine defendant

Ahmed purports to name a canine as a defendant, alleging that the dog gave a false positive for drugs during an unidentified stop. He now asserts that the actual defendant here should be the dog's owner or trainer.[120]

But Ahmed has taken no steps toward identifying such an individual. Thus, as with the other John Does, the canine handler or owner remains a John Doe defendant, and Ahmed would need equitable tolling to avoid a problem with the two-year limitations period. As noted, equitable tolling is to be used sparingly and then only when the litigant's failure to take an action was due to something beyond his control.

---

[119] *Staples v. United States*, 2016 WL 3611883, at * 3 (E.D. Mich. July 6, 2016)(citations omitted).
[120] ECF N0. 32 at 3.

The complaint itself does not allege whether the K-9 drug sniff occurred totally outside Ahmed's car, or if officers placed the dog inside of the vehicle. It is clear that a drug dog sniff outside a car is not a search for Fourth Amendment purposes, nor does such an action require probable cause.[121] Moreover, a positive drug sniff constitutes probable cause for an officer to search a vehicle.[122] Further, even without a positive sniff, officers are not liable for an improper search if a police dog's leap into a vehicle was instinctual, not orchestrated, and the police had not previously asked the driver to open the point of entry used by the dog.[123]

At present, the complaint alleges that the police dog gave a false positive from apparently sniffing outside the vehicle. That positive indication by the canine officer then resulted in a search inside Ahmed's vehicle.[124] There is no claim that the dog's handler specifically ordered the dog to react as if he was identifying drugs, only that a drug sniff outside the car was followed by a search inside the car that did not find any drugs.

As stated, drug dogs may properly sniff outside the car without a prior determination of probable cause, and once a sniff is positive, officers have probable cause to then search the vehicle. I have found no case authority for the proposition that police violate the

---

[121] *Felders ex rel.Smedley v. Malcom,* 755 F.3d 870, 880 (10th Cir. 2014) (citations omitted).
[122] *Id.*
[123] *Id.*
[124] ECF No. 1 at ¶ 6.

Constitution by initiating a search in reliance on an what is later determined to be an erroneous positive from a drug-sniffing dog.

Accordingly, this claim does not state a cognizable claim for relief and any amendment to identify the dog handler would be futile. Moreover, because officers were constitutionally entitled to conduct the vehicle search after receiving a positive sign for drugs from the canine officer, there is no cognizable claim for relief in the arguments that this search was the result of any failure to train (Count VIII),

### d. .Lieutenant Beth[125]

The defendants claim that although they acknowledged service on Lieutenant Beth, they have actually been unable to locate an individual by that name. Ahmed, in turn, states that Lieutenant Beth should be able to be identified because he was the Highway Patrol post commander "on the day they stopped plaintiff…."[126]

As discussed above, Ahmed is responsible for naming and identifying  this defendant by his true name. Accordingly, it is not sufficient that Ahmed has alleged that his claim is against the unnamed or incorrectly named "post commander" on December 10, 2015, and that the Highway Patrol should "ask the other defendants" to provide a correct name. That responsibility is Ahmed's he has not met it.

---

[125] This individual is identified by Ahmed as Lieutenant "Beth" in the Complaint (see, e.g., ECF No. 1 at 1, 3), but as Lieutenant "Bath" in the response to the motion to dismiss (see, ECF No. 32 at 2-3). The summons prepared by Ahmed is to Lieutenant "Beth." (ECF No. 9, Attachment 1 at 3).

[126] ECF No. 32 at 2. I note here that Ahmed appears to reference that there is only one stop at issue. The only stop identified by a specific day is December 10, 2015. ECF No.1 at 4.

Accordingly, the defendant Lieutenant Beth should be dismissed.

### 3.     Named defendants

*a.  Trooper Hilling*

As noted, the allegation against Trooper Hilling is that he stopped Ahmed for the sole purpose of inspection and then subjected him to an illegal search.[127]First, the complaint contends that the initial stop by Trooper Hilling was made under circumstances "virtually identical" to the stops under Operation Pipeline.[128]  He further states in that regard that the stop was "under the guise of a minor traffic violation."[129]

As detailed above, Operation Pipeline relied on stopping vehicles for observable traffic violations. In that regard, even a minor traffic violation, however, constitutes probable cause for a traffic stop.[130]  Moreover, as also noted above, a positive sniff by a canine is probable cause for a vehicle search and Ahmed's complaint admits there was a positive sniff in his case. Thus, given the facts as alleged, Ahmed cannot here maintain the claim that Trooper Hilling engaged in an improper stop and illegal search.

*b.  Trooper Melichant*

---

[127] ECF No. 1 at ¶ 9.

[128] *Id*.at 5.

[129] *Id*. at 4-5.

[130] *Whren v. United States*, 517 U.S. 806, 818 (1996). Indeed, if there is even the reasonable suspicion of a traffic violation, "[t]he officer's subjective motives for stopping the vehicle are irrelevant under Fourth Amendment analysis." *Whren*, 517 U.S. at 813.

The claim against Trooper Melichant is that, in patting down Ahmed as part of the search for drugs, he patted the private areas of Ahmed "just to annoy him."[131]

As has already been discussed, the underlying search of Ahmed's vehicle for drugs in this case was based on probable cause. But it is also well-settled that even in the context of an otherwise proper vehicle search, an officer may perform a pat-down on a driver or any passengers only upon the reasonable suspicion that they may be armed or dangerous.[132] Moreover, a pat-down search may be authorized as incidental to a proper arrest,[133] but no arrest is alleged to have been made here.

In the context of claims arising out of valid or uncontested pat-downs, the Sixth Circuit has held that isolated or brief incidents of intimate physical contact during the pat-down are not actionable.[134] Indeed, the Sixth Circuit has also held that even an allegation that a guard grabbed the prisoner's genitals and squeezed them during a pat-down was too "subjective and vague" a claim to state a ground for relief.[135] Further, a single claim that a guard rubbed and grabbed the prisoner's buttocks in a degrading manner was "isolated, brief, and not severe," and so failed to state a claim on which relief could be granted.[136]

Here Ahmed phrased his complaint solely as one alleging that the pat-down was done in an inappropriate manner, a claim which does not on its face contest the validity of

---

[131] ECF No. 1 ¶ 7.
[132] *Knowles v. Iowa*, 525 U.S. 113, 118 (1998) (citation omitted).
[133] *United States v. Robinson*, 414 U.S. 218, 234 (1973).
[134] *Solomon v. Michigan Dept. of Corr.*, 478 Fed. Appx. 318, 320-21 (6th Cir. 2012).
[135] *Tuttle v. Carroll County Detention Center*, 500 Fed. Appx.480, 482 (6th Cir. 2012).
[136] *Jackson v.Madery*, 158 Fed. Appx. 656, 661 (6th Cir. 2005).

the pat-down. Even in matters of *pro se* complaints, it is not the court's duty to "conjure up unpled allegations" or to "create a claim for the plaintiff."[137] Thus, for the reasons stated, the complaint, as pled, fails to state a ground for relief against Trooper Melichant.

Accordingly, this claim against this defendant should be dismissed for failure to state a claim for relief.

### 4. Conspiracy

Ahmed claims the existence of a conspiracy under 42 U.S.C. §§ 1983, 1985. That said, the complaint makes no factual allegations to explain the formation of this alleged conspiracy or how it was purportedly executed.[138] Moreover, in a conspiracy alleged under Section 1985, a plaintiff must make sufficient factual allegations linking the conspirators to the conspiracy and further allege a meeting of the minds essential for the existence of a conspiracy.[139]

Here, Ahmed makes a conclusory allegation of the existence of a racially motivated conspiracy. He makes only conclusory allegations that some named defendants acted in concert with other unnamed persons but has failed to present any factual allegations demonstrating the existence of any actual specific agreement between two or more specified persons to do specific acts that would discriminate against African Americans.

---

[137] *Jones-Bey v. Conrad, et al.*, 2017 WL 693284, at *2 (W.D. Ky. Feb 21, 2017) (internal citations omitted).
[138] *See Hicks v. City of Barberton*, 2011 WL 3022089, at * 4 (N.D. Ohio July 22, 2011)(citations omitted).
[139] *Id.*

Again, the stating of conclusions or opinions is not sufficient to plead the existence of a conspiracy.[140]

Accordingly, for the reasons stated, the conspiracy claims under Sections 1983, 1985 should be dismissed for failing to state a claim upon which relief may be granted.

### 5. The Arizona consent judgment

In making his claim regarding the Arizona consent judgment, Ahmed appears to contend that liability should arise against the Ohio officers because they "should have known" about the terms of a settlement reached in an Arizona class action case by means of a consent judgment. He further suggests that the terms the consent decree entered in that matter establish a standard of conduct applicable to the defendants here.

As is well-settled, a consent decree is a private resolution of a dispute by the parties themselves that has then been entered by the court. In other words, a consent judgment depends for its validity on the consent of both parties and not a judgment on the merits by the court.[141] The consent judgment does not represent the opinion of the court and has no precedential value in other proceedings.[142]

Therefore, all claims predicating liability on an alleged failure to comply with the terms of the consent decree in the Arizona case should be dismissed.

---

[140] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).
[141] *Traverse Bay Area Intermediate School District v. Michigan Dept. of Ed.*, 2008 WL 351651, at * 8 (W.D. Mich. Feb. 6, 2008) (citation omitted).
[142] *Gascho v. Global Fitness Holdings LLC*, 918 F.Supp.2d 708, 715 (S.D. Ohio 2013)(citations omitted).

### 6. Failure to train/discriminatory policy or practice

Ahmed alleges that defendants have a policy or practice of harassing African American motorists.

Under Section 1983 a government agency may be liable for an injury caused by an employee acting in the scope of his official duties if the injury was the result of a policy or custom of the agency.[143]Inadequate training may serve as the basis for liability if the failure to train amounts to deliberate indifference to the rights of those affected by the conduct of the agency employees.[144]Deliberate indifference can transform the conduct into a policy or custom that is actionable.[145]

That said, a policy or custom cannot be established through proof of a single act of wrongdoing by a non-decision maker.[146] Further, where the alleged act purportedly showing the existence of a discriminatory policy has not been shown to be unconstitutional, there can be no discriminatory policy or custom.[147]

Here, the only specific allegations of unconstitutional acts by individual defendants have not been sufficient to state a claim for relief. As such, they are also insufficient to state a claim for relief against any agency for failure to train or for maintaining an unconstitutional custom or practice. Thus, such claims should here be dismissed.

---

[143] *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978).
[144] *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).
[145] *Id.*
[146] *City of Oklahoma City v. Tuttle*, 471 U.S. 808,
[147] *West v. Duncan*, 179 F.Supp. 2d 794, 807 (N.D. Ohio 2001).

## 7. Selective enforcement

A selective enforcement claim alleges a violation of the Equal Protection Clause. One such claim is that laws are selectively enforced for the purpose of the "forbidden aim," of racial discrimination.[148]

To establish a selective enforcement claim a plaintiff must show: (1) an official singled out a person belonging to an identifiable group for prosecution while not choosing to prosecute persons not belonging to that group in similar circumstances; (2) the official made that decision for discriminatory purposes; and (3) the action must have a discriminatory effect on the group to which the plaintiff belongs.[149]The standard for establishing a selective enforcement claim is a "demanding one," as state actors have a "strong presumption" that they have properly discharged their duties.[150]

Here, Ahmed has failed to plead any facts that show that similarly situated drivers of another race were treated differently, which is an "absolute requirement" in any selective prosecution case.[151] While he has made conclusory allegations to that effect, he has alleged no facts to show that drivers of another race who were observed committing traffic infractions were pulled over less frequently than African America drivers. Or that having been pulled over and having received a positive sniff from a canine, the vehicles of African

---

[148] *Id*. (citations omitted).
[149] *Gardenhire v. Shubert*, 205 F.3d 303, 319 (6th Cir. 2000) (citation omitted).
[150] *West*, 179 F.Supp. 2d at 806 (internal citations omitted)
[151] *Id*.

American drivers were more frequently searched than the vehicles of similarly situated Caucasian drivers.

Accordingly, the claims of selective enforcement here should be dismissed as failing to state a claim on which relief may be granted..

## 8. Right to interstate travel

As noted above, the constitutional right to travel through a state is not a right to travel free from state regulations, nor does it give a motorist the right to ignore state traffic laws.[152] Inasmuch as Ahmed has not alleged any constitutional violation that can state a cause for relief, what remains is that Ahmed is dissatisfied that he was pulled over for a traffic infraction and was further subject to a vehicle search after a drug enforcement canine gave a positive sign. That does not state a claim that he was in any way denied the right of interstate travel.

## 9. Injunctive Relief

The parties dispute whether the complaint asks for injunctive relief. But if all of the allegations of the complaint are dismissed as failing to state a claim upon which relief may be granted, it is not relevant to separately discuss the type of relief that was originally sought but is now not available.

---

[152] *Hare*, 308 F.Supp.2d at 1001.

## Conclusion

For the reasons stated, I recommend that the *pro se* action of Abubakar Ahmed be dismissed with prejudice.

IT IS SO RECOMMENDED.

Dated: August 28, 2019                                        s/William H. Baughman Jr.
                                                             United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[153]

---

[153] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).